Our next case is CANVS Corporation v. The Air Force, 2019-1190, Mr. Zito. Good morning, Honors. I'm Joseph Zito, here representing CANVS, and with me at the table is CANVS's President and Founder, Mr. John Walkenstein. Please, the Court. This case came from ASBCA, and at the ASBCA, this case was bifurcated into liability, i.e., was the contract breached, and damages. We tried the liability part, didn't get to the damages part, but according to the decision from the Board, we lost on damages, and we don't think that's the correct decision. I don't think there's any dispute, as we set forth in our brief, that there was confidential information during the contract that was marked, properly marked, because there was no protest on the mark during the time. The question is harm, right? We don't find liability because the invention was not profitable. All the reasons why the Court ruled against us were based upon harm. We submitted harm. Excuse me, we didn't submit harm. Let me correct that. The government submitted harm. If you look at Appendix 156 through 158, which was the government's Exhibit 138 at the trial below, this is a statement by a third party. We can't, in fact, read that. That's why I gave you the citations. Statement by a third party about harm. This harm was also testified to at trial, referring to this document that was entered by the government, as here is harm. The agreement between the government and counsel was that we don't need to bring in third party witnesses because there are a number of third party witnesses that would testify to the quantum of damages if we could establish damages, which is why we drafted the… You're asking us on appeal to accept that this letter was the proof that you proffered of harm, so the Court shouldn't have found against you on that point, but you didn't make that argument. We submitted this document and the testimony to the Court below. That was the harm element. Again, it was bifurcated. It was not, we didn't have to prove what the damages were. We cited to the transcript where the judge agreed. Did you cite it to show harm below? Yes. We cite it to show harm. We cite it to the portion of transcript that's in our brief, and it's exhibit in the appendix. It's the appendix 2578 is where it begins, and it's pages. It's that section of the appendix that goes up to page 2899. It's selected pages from the transcript where we discuss that… Where did you, where is it? Where? Appendix 2578 to… That's the transcript, right? That's the transcript. Could you identify a specific page where you presented the document at the statement you're relying on for harm at 156 to 158? Can you cite the specific transcript page where that's addressed? Yes. Yes, I can. Because what you gave us was just the cover letter, or the cover for the transcript. Right. Well, the only pages that are in the appendix are the selected pages where that was… So are you saying that you can't provide a cite to us today because it's not in the appendix? No, no. The pages in the appendix are the citation from the transcript. The appendix does not include the entire transcript. It includes two dozen pages from the transcript that are the selected pages, but I can give you the exact cite here. If you look on our brief, it starts on page 10 of our brief. The judge talks about Mr. Powell, the third party, not being there. Mr. Zito, the court, from the court, Mr. Zito contends there are portions that are relevant to entitlement as well. And we go on to talk about the document, and we elicit testimony from Mr. Walkenstein that says, yes, what's in the document is correct, that we were damaged. And the court says, well, actually, government objected, Mr. Powell's not here, this is really moving into the damages phase. We agreed that the document had to do with the damages phase, but it also established and met the standard, which is the exercise in liability is not merely academic. That's the only standard we had to meet, and we cited the case law that supports that standard. What we were surprised at is when the board renders a decision saying we find that you have not shown sufficient value. You have not shown that there is a good market for this. And the board even went on to say, and we cite in our reply brief, that because you haven't established. And then the board cites, too, the fact that we put the Powell letter in there, we put the testimony from Mr. Walkenstein, and then we said that's a damage. What the board said was, yes, but we didn't prove that the investment of the $5 million into the company would have produced a profit sometime later by selling product. The board was well aware that we put the $5 million lost investment in as a harm. And they analyzed it, but they went, again, into damages. Whether or not the $5 million would have turned a profit later on due to sales is quantum of damages. It's not makes liability not an academic question. And that's the standard that we were operating under. And with the understanding, as Judge Peacock said at the very beginning of the hearing, this is a much less formal hearing than you would have in court. And we had many discussions on the record with the judge about many, many things that were less formal. And this was the agreement was not to bring third parties in, disrupt their businesses, disrupt their lives to come in and give testimony until we got to the damages phase. So it was accepted that this was an issue that shows there's a real harm. There are also questions about whether what was disclosed in the postal was proprietary. Correct. And that's because the board never went and decided what the package of rights were. If the package of rights were limited rights, then the proprietary nature may or may not be a relevant issue. But because these were restricted rights, the proprietary nature isn't actually an issue. We've cited to the code, and it's going to take a long time to go through that here. But the code says, if you already had it and you believe it's proprietary, you mark it as proprietary, and the government can't tell anybody, even if it's not proprietary. Didn't the government show the poster to the company and get approval for some changes? There's that confusion. There were a total of three posters. There was a poster that was going to the closed-door session for the Intelligence Committee that was approved by Mr. Walkenstein, which had the trade secrets, the proprietary information. There was then a second poster that was going to a more public meeting that was sanitized. And you'll see throughout that there's a sanitized poster, which took out most of that information with a back-and-forth between Mr. Walkenstein and the government. The government recognized those things that Mr. Walkenstein said were proprietary and took them out for the sanitized poster. And then another government employee in the same group needed a poster to go down to Florida for a very public display. And that individual took the private confidential poster and brought it to Florida, not the sanitized poster that had been approved. So Walkenstein Canvas, the plaintiff, had approved one version of a poster. But that's not the one that went to Florida for the conference. That was the unsanitized version. So there were three posters. The one in Florida was a slightly modified version. It had a different header on it. That's why I say three posters. It was the same information. It was a restricted, need-to-know-only Intelligence Committee poster that he took down to Florida and displayed. So there was no dispute in the record that the things that were displayed in Florida were marked by Canvas and the government was told not to display that publicly. The arguments that are made in defense of that is, well, it didn't matter. Other people could have figured it out. It wasn't sufficient to build the device. A lot of arguments that have no basis in the statute. The statute says you're signing a contract. The government is signing a contract with a small company. The government gives them money to develop something to help the government. And in exchange, they have to tell the government information. But in exchange back for that is the government promises not to let that information become public. And the government breached that promise. They breached the contract. Liability is not in dispute. It at least harmed them in that they lost $5 million worth of funding. And we should be sent back. All we're asking is to be sent back to the damages phase because we've established that they breached the contract. There's not a dispute that they breached the contract. Everything the board said is not, oh, you didn't breach the contract. They said it didn't matter. It didn't matter because you might not have made a profit on that $5 million. It didn't matter because other people didn't buy some from somebody else. It didn't matter. We weren't in the didn't matter phase. We were in the did you breach the contract as their liability. They didn't hold that there was a breach of contract. They said we're not going to resolve some of the issues. We're going to turn to whether there was harm, right? So if we were to remand, there would have to be a determination. That's right. On the findings of fact, there can be no determination but there was a breach. But yes, technically, you would have to say this is the bundle of rights and there was a breach of those bundles of rights. That's correct. But we would only be going back for the damages phase and for a further decision. To your rebuttal time, you can continue or save it. Go ahead and save it. Here's your coffee. Good morning, Your Honor. May it please the court. The board below made 40 pages of findings of facts and 190 paragraphs after having 11 days of a hearing. The hearing was in the entitlement phase. The board made numerous findings of fact regarding entitlement, although did not reach a final conclusion as to whether there was a breach. We vigorously dispute that there was a breach. In fact, many of the findings of fact that the board made would be incompatible with a finding of a breach. For instance, the board found that they made findings of fact that showed that they did not use the proper markings consistent with the paragraph of the contract on which they rely. Another aspect that the board found was that the technical data was provided under the terms of the SBIRC. It was generated under the SBIRC contracts, meaning that it is subject to the public disclosure and exception under the contract. But the board did reach that for its own reasons. But the fact of the matter is that the board found that under no set of circumstances could Canvas establish any harm, even if it assumed that there were some sort of breach. And the reason why was because the information was made publicly available. It wasn't proprietary. And with regard to the Powell Statement, to be very clear about that, that was never offered. It was never preserved below because Canvas had two opportunities in post-hearing briefs to raise this Powell Statement. It never mentioned Mr. Powell. It never mentioned Mr. Powell's company. It never mentioned a $5 million investment or having a $5 million investment pulled. There's an absolute failure of preservation of any issue regarding the Powell Statement. I don't know if the court has any more questions. I'd be happy to entertain them. As you know, no one gets penalized for surrendering time. Thank you, Mr. McCarthy. We ask that the judgment below be affirmed. I understand. Mr. Zito. The board below did find that the marking did not exactly comply with the statutory requirement. But as the board also found, that if there's no compliance, the contracting offers have to say there's no compliance and give you 60 days to cure it. So the board also found the contracting officer never gave the 60 days notice, so they accepted it. The technical data was not generated in the SBIR. We showed that it was done in an earlier project, in an earlier phase. And in the proposal for the SBIR, the technical data was already presented in the proposal. Public availability, again, that's one of those issues that were considered by the board that is not an excuse. It's not a reason why the government can disclose the data. The fact that, again, that's where the board conflated the SBIR rules and the contracting rules with trade secret law. If this was a trade secret case, it's correct. If the plaintiff themselves discloses a trade secret, then it's no longer a trade secret. This is a breach of contract case. The government is contractually obligated not to disclose anything, whether it's publicly known or not. There's no publicly known exception to that. There's no fundamental principle of science exception that the board also found. There's no publicly known exception. So the other reasons why there was no finding of liability are also not correct. And they also go, again, to the failure of the board to even make the first finding they had to make, which they admit in the decision. They didn't bother to make the finding of what the bundle of rights were. If there's three factors that a court has to consider in order to rule in your favor, and it only considers one or two of them and finds against you, isn't that enough? Well, if that was true, that each of the factors was an exclusive factor, yes. But if the other two factors depend upon the first factor, then no, that's not correct. In the very, very complex area of contracting, SBIR contracting, contracting in general, the first step you have to determine is when was the material, the proprietary information developed, before or after the contract? Was it included in part of the proposal for the contract? Was it developed with government money? That puts you into two different categories. And then you have to look at what kind of markings and what agreements on markings are in the addendum to the contract, and that puts you in other categories. This and the board's decisions addresses that at the very beginning, saying we didn't find that. If this falls in, and we believe it does, the restricted rights category, then the technical data generated on the SBIR isn't an excuse. The public availability isn't an excuse. All these other reasons that flow from that are not an excuse. But pursuant to Judge Stoll's question, if you have failed to argue or establish any harm, that is part of the liability determination, and that would be a sufficient reason to affirm the decision, right? You're required to show harm to establish liability. Required to establish that the issue of liability, the harm part of liability, is not merely academic. We cited the case law that states that. So what is your evidence of harm that you proffered? Is the failure of the company to continue on, which was testified to, because of the lack of investment, which was testified to, which is the Powell issue. But none of that was introduced in any of your briefing in this case, and you didn't introduce the Powell letter. You didn't? I mean, I don't— No, we—it was an—during— Is Ms. McCarthy wrong when she said you had two rounds of briefing and you never mentioned the $5 million? You never mentioned the Powell letter? You never mentioned Mr. Powell's testimony in any of those rounds of briefing? Is she wrong when she makes that assertion? No, we cited it in our briefing to the board. Where? And we just—it was—we did over 3,000 pages of post-trial briefing in that case. And you are confident, like as in your bar license, confident that you cited it because you just said, we cited it to—no. When I said, Ms. McCarthy says it's not cited anywhere in any of that briefing, and you responded affirmatively without a moment's hesitation, no, we cited it. So is that something that you want to think more about and say, I think maybe we did, or do you want to actually state that Ms. McCarthy is inaccurate and that you did cite it and that you know that for a fact as you stand there? I cannot, as I stand here, say that document G138 appears as a reference in the post-hearing briefing. Or the word Powell. I'm almost confident the word Powell does. But I can— Almost confident. I can assure you. Wow. The 11 days of trial occurred over a period of nine months. And I can assure you that we discussed it, and I showed you the transcript, with the judge who accepted that it was an issue that established, but he did not want to go into it because it went into damages. If you look at the transcript we cited, we tried to explore that further, and the judge said, Judge Peacock said, that's a damages issue. We're not dealing with damages issue. We're only dealing with the liabilities issue. Thank you, counsel. We have your argument. Before you sit down, I think you introduced the gentleman at the table as client rather than counsel. That's correct. That is the counsel table, not for clients. I state that for the future. I didn't want to mention it before and disrupt your argument. So we'll take the case under advisement. Thank you.